UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNELL C WILLIAMS,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 16-cv-01105-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 21 |

Plaintiff Darnell C. Williams seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On May 3, 2012, Plaintiff filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income, alleging a disability that began on December 31, 2008.[1] (Administrative Record ("AR") 225-235.) The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. (AR 158, 167.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 174-75.)

---

[1] Plaintiff previously filed an application for Title II Disability Insurance Benefits in August 2011, which was denied in December 2011. (AR 134.) Plaintiff did not request reconsideration of the denial, and the Administrative Law Judge ("ALJ") dismissed Plaintiff's request for a hearing with respect to the previously adjudicated period, *i.e.*, through December 2011. (AR 18.) The ALJ's decision thus adjudicated the period from December 29, 2011 through the date of the ALJ's decision. (*Id.*)

The assigned ALJ held a hearing on March 25, 2014, at which Plaintiff and Vocational Expert ("VE") Mary Ciddio testified. (AR 42.) At the beginning of the hearing, the ALJ and Plaintiff's counsel discussed the absence of medical records from the Watson Wellness Center; the ALJ stated that he would issue a subpoena for the records and recommended that Plaintiff's counsel file a complaint with the medical board. (AR 43-44.) In relevant part, Plaintiff testified that following an operation on his left wrist, he still had problems using his left hand, including shaving, buttoning his shirt, washing dishes. (AR 51-52, 56.) Plaintiff stated that his fingers were stiff and that he had problems bending them. (AR 52.) Plaintiff also testified that he had problems with his lower back, and that he was going through therapy for sciatica. (AR 53.) Plaintiff discussed recent x-rays of his back, which Plaintiff's counsel stated were likely part of the Watson records. (AR 54-55.) When questioned by his attorney, Plaintiff stated that he walked all the time and for "a couple of blocks," but that he could not stand very long. (AR 59.)

The ALJ then examined VE Ciddio, giving her a hypothetical of an individual with a GED, no past relevant work, and restricted to exertional activity. (AR 68.) The individual would also be able to stand and walk six out of eight hours, sit six out of eight hours, lift up to 20 pounds occasionally and 10 pounds frequently, and perform stooping, kneeling, crouching, and crawling on an occasional basis. (*Id.*) The hypothetical also included that there were no restrictions on gross or fine manipulation, but that the individual could not perform repetitive forceful gripping on the left. (AR 69.) Finally, the individual would be limited to simple, repetitive tasks. Based on this hypothetical, the VE answered that such an individual could work as a fast food worker, marker, and plastics inspector and hand packager. (AR 69.) The ALJ then asked if the VE's response would be different if the left hand was just a helper hand without useful manipulation, gripping, or grasping. (AR 70.) The VE responded it would not change the response. Next, the ALJ presented a hypothetical of no forceful gripping bilaterally, to which the VE responded that the marker would be eliminated but the fast food worker and inspector would still be fine. (*Id.*) Finally, the ALJ inquired about an individual who could only occasionally grip, grasp, and manipulate bilaterally. The VE answered that in such a case, the jobs would be eliminated. (AR 71-72.)

1    Plaintiff's counsel then questioned the VE how an individual whose left hand could work only as a helper hand could work as a fast food worker. (AR 71.) The VE responded that in such a case, the left hand would not be performing the fine or gross manipulation. (AR 72.) Instead, the individual would perform duties such as flipping burgers, French fries, using a cash register, and bagging things with the dominant hand. (*Id.*) The VE attested that she had seen people with greater limitations performing such jobs because it was very light work. With respect to plastics inspector, Plaintiff's counsel pointed out that one of the descriptions included attaching metal bands to bottle tops. (*Id.*) The VE responded that there could be a ten percent erosion for that aspect. (AR 73.)

The ALJ then concluded the hearing, stating that he would leave the record open. (AR 73.) The ALJ indicated that Plaintiff should try to get the Watson records, and again stated that he would send a subpoena. (*Id.*)

The ALJ issued an unfavorable decision on July 25, 2014. (AR 18-32.) A request for review of the hearing decision was filed with the Appeals Council on September 25, 2014. (AR 14.) On September 24, 2015, the Appeals Court denied Plaintiff's request for review. (AR 6-8.) On March 4, 2016, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

On September 19, 2016, Plaintiff filed a motion for summary judgment. (Plf.'s Mot., Dkt. No. 19.) On October 17, 2016, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 21.) On November 1, 2016, Plaintiff filed a reply brief. (Plf.'s Reply, Dkt. No. 22.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In

1 determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick*, 157 F.3d at 721. At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante*, 262 F.3d at 953-954. The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On July 25, 2014, the ALJ issued an unfavorable decision. (AR 18-32.) At step one, the

4

ALJ determined that Plaintiff had not been engaged in substantial gainful activity since December 31, 2008, the alleged onset date. (AR 21.)

At step two, the ALJ identified the following severe impairments: history of repeated alcohol abuse, degenerative disc disease at C4 to C7 with disc space narrowing and spurring, degenerative changes of the lumbar spine at L5-S1, mild left carpal tunnel syndrome, mononeuropathy of the left ulnar nerve, status post left cubital tunnel and carpal tunnel releases without complications, and mood disorder. (AR 21.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 21.) First, the ALJ found that Plaintiff had mild restrictions in activities of daily living, pointing to the consultative exam in which Plaintiff indicated he spent time performing household chores. (AR 22.) Plaintiff also reported preparing meals, performing personal grooming activities, and going shopping. Second, the ALJ found that Plaintiff had mild difficulties in social functioning, as Plaintiff had indicated that he attended social group meeting three to four times a week, attended church services twice a week, and spent time with family and friends. (*Id.*) Third, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace, based on the consultative exam which showed that Plaintiff had fair memory, judgment, and insight, poor to fair attention and concentration, and a mildly tangential thought process. (*Id.*) The ALJ also concluded that Plaintiff had experienced no episodes of decompensation of an extended period.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that the plaintiff could: stand, walk, or sit for six hours out of an eight-hour workday; lift and/or carry twenty pounds occasionally and ten pounds frequently; perform all postural activities, including stooping, kneeling, or crouching; and reach in all directions. (AR 22.) The ALJ also found that Plaintiff had no limitation with respect to fine or gross manipulation, but also that Plaintiff could not perform repetitive, forceful gripping on the left. (AR 23.) The ALJ restricted Plaintiff to simple, repetitive tasks. (*Id.*) In so concluding, the ALJ considered Plaintiff's hearing testimony and various medical reports. (AR 23-24.) The ALJ ultimately concluded that the credibility of Plaintiff's allegations regarding the severity of his

symptoms and limitations was diminished because Plaintiff's allegations were greater than expected in light of the objective evidence in the record, pointing to Plaintiff's daily activities and medical examinations. (AR 24-25.) In light of Plaintiff's subjective complaints of left upper extremity pain, weakness, and tingling, however, the ALJ included a limitation of no repetitive gripping and/or grasping with the left upper extremity. (AR 30.)

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy, specifically as a fast food worker, marker, and hand packager. (AR 31-32.) The ALJ also found that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles." (AR 32.)

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds. (Plf.'s Mot. at 2.) First, Plaintiff contends that the ALJ made materially inconsistent findings regarding Plaintiff's ability to use his left hand for gross manipulation. Second, Plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p. Finally, Plaintiff contends that the ALJ should have obtained additional consultative examinations and/or medical expert testimony.

### A. Inconsistent Findings

Plaintiff first challenges the ALJ's RFC assessment as materially inconsistent. (Plf.'s Mot. at 7.) The ALJ found that Plaintiff had "no limitation with regard to fine or gross manipulation," yet at the same time found that Plaintiff could not perform "repetitive, forceful gripping" with his left hand. (AR 23.) Defendant does not respond to this argument.

As pointed out by Plaintiff, handling is considered a manipulative function. 20 C.F.R. § 404.1569a(c)(vi) (listing reaching, handling, stooping, climbing, crawling, and crouching as manipulative or postural functions). Handling, in turn, includes grasping. SSR 85-15 ("handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands"), 1985 WL 56857 (Jan. 1, 1985). Likewise, "gross" use of hands includes grasping, holding, and turning objects. SSR 83-14, 1983 WL 31254 (Jan. 1, 1983). In short, gross manipulation includes grasping, or gripping. Thus, by finding that Plaintiff had no limitations with regard to gross manipulation, before including a limit that Plaintiff could not perform

1  repetitive, forceful gripping with his left hand, the ALJ created an inconsistency by including a
2  limit after finding that Plaintiff had no limits.

While the Court finds that the ALJ's RFC assessment is inconsistent, Plaintiff does not adequately explain why this is material or requires remand. The addition of the limitation on the repetitive, forceful gripping is more restrictive than a finding of no limitations, and the VE considered the left hand limitation in the ALJ's hypotheticals, discussing the ability of an individual to perform jobs if their left hand was unable to perform repetitive forceful gripping or even any useful manipulation, gripping, or grasping. (*See* AR 68-73.) Therefore, the fact that the ALJ added a limitation after finding that Plaintiff lacked any limitations in gross manipulation is not harmful error, as the limitation was addressed by the VE's testimony. As such, the Court concludes remand is not appropriate on this ground.

**B.  SSR 00-4p**

Second, Plaintiff argues that the ALJ did not comply with SSR 00-4p. "SSR 00-4p unambiguously provides that 'when a [VE] provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that [VE] evidence and information provided in the *Dictionary of Occupational Titles* [("DOT")].'" *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (quoting SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)) (internal modifications omitted). Here, the ALJ indisputably did not inquire about any possible conflict, but did write in his opinion that the testimony was consistent with the DOT. (AR 32; *see also* Def.'s Opp'n at 4 ("the ALJ did not specifically ask the VE whether her testimony conflicted with the DOT").) Error in failing to follow SSR 00-4p is harmless only if: 1) there is no conflict; or 2) the VE provided sufficient support for her conclusion to justify any potential conflicts. *Massachi*, 486 F.3d at 1153-54 n. 19.

Here, the ALJ's RFC found that Plaintiff was unable to do repetitive, forceful gripping with his left hand. (AR 23.) Plaintiff argues there is a conflict, however, because the DOT provides for constant handling (2/3 or more of the time) for fast food workers, frequent handling (1/3 or more of the time) for inspectors and hand packagers, and constant handling (2/3 or more of the time) for markers. (Plf.'s Mot. at 9; *see also* Plf.'s Exh. A (DOT excerpts regarding fast food workers,

inspectors and hand packagers, and markers).) Defendant responds that the SSA "interprets the DOT's reaching and handling requirements as requiring only the use of one arm, not both arms; therefore, there is no conflict between the ALJ's RFC and the DOT because Plaintiff has no reaching/manipulative limitations related to his dominant right arm." (Def.'s Opp'n at 2.) In other words, Defendant asserts that "the DOT's requirements are met if they can be performed with one arm."[2] (*Id.*)

Recently, the Ninth Circuit rejected the contention that the DOT only required the use of one arm, not both arms. In *Lamear v. Berryhill*, the ALJ found that the plaintiff could only occasionally handle, finger, and reach overbroad with his left, non-dominant hand and arm, but that the plaintiff had no limitations with his right arm. 865 F.3d 1201, 1203 (9th Cir. 2017). The VE opined that the plaintiff could work as an office helper, mail clerk, or parking lot cashier, even though the DOT stated that these jobs require "frequent" handling, fingering, and reaching. *Id.* The VE did not explain how the plaintiff could perform this work with his left hand and arm limitations, and the ALJ did not ask the VE to reconcile the inconsistency between the plaintiff's limitations and the DOT's job descriptions. *Id.* at 1204. On appeal, the Ninth Circuit explained that it could not, based on common experience, conclude that "it is likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties." *Id.* at 1205. Instead, the Ninth Circuit found that "all three jobs require workers to 'frequently' engage in handling, fingering, and reaching, which means that these types of activities could be necessary for as much as two-thirds of the workday. Absent anything in the record to explain this apparent discrepancy," the Ninth Circuit found it necessary to reverse and remand so that the ALJ could ask the VE to reconcile the jobs with the plaintiff's left hand limitations. *Id.* at 1205-06. While the SSA argued that the conflict was harmless because the court could "presum[e] that the handling, fingering, and reaching requirements are unilateral since the DOT does not expressly state that they demand both hands,"

---

[2] Plaintiff argues this is a post-hoc rationale. (Plf.'s Reply at 1.) It is not clear to the Court that this is a post-hoc rationale, based on Defendant's contention that this has been the agency's long-standing interpretation. In any case, as discussed below, the Court rejects Defendant's argument that the DOT requirements are always met with unilateral use of hands, rather than bilateral use.

the Ninth Circuit rejected this argument, explaining that it "cannot determine from this record, the DOT, or our common experience whether the jobs in question require both hands." *Id.* at 1206. In other words, the Ninth Circuit did not agree that the DOT job requirements *necessarily* required only unilateral capabilities, rather than bilateral capabilities. While a job could require only unilateral capabilities, this required further inquiry by the ALJ to determine what the DOT descriptions actually entailed.

Here, the ALJ did not inquire about any potential dispute, and instead found that the VE's testimony was consistent with the information contained in the DOT. (AR 32.) The ALJ also did not inquire as to whether the DOT description required unilateral or bilateral use of the arms. Notably, the VE also testified that an individual with no ability to do forceful gripping *bilaterally* would still be capable of doing the fast food worker and inspector jobs, despite both DOT job descriptions requiring frequent handling (1/3 to 2/3 of the time) or constant handling (2/3 of the time). The VE did not explain how such a person would be able to perform jobs that required handling at least 1/3 to 2/3 of the time per the DOT. Thus, it appears a conflict existed between the VE's testimony and the DOT, which the ALJ did not address.

In the alternative, Defendant argues that the VE provided an explanation for any conflict because the VE discussed a hypothetical where there was no gross repetitive forceful manipulation with the left hand, or where the left hand operated only as a helper hand. (Def.'s Opp'n at 5.) Further, the VE explained that most of the work would be done with the dominant hand, and that she had observed individuals doing those jobs with similar or even greater limitations than the ones provided by the ALJ. (*Id.*) Plaintiff responds that Defendant cannot rely on the VE's testimony as a reasonable explanation for any conflict when the VE did not address any such conflict to begin with. (Plf.'s Reply at 6.) Otherwise, "a [VE]'s testimony made without reference to the DOT is actually an explanation for any conflict between the testimony and the DOT." (*Id.*)

The Ninth Circuit requires that the ALJ "ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The failure to do so may leave the court "with a gap in the record that

9

precludes [it] from determining whether the ALJ's decision is supported by substantial evidence." *Id.* Here, the ALJ did not find a conflict, and therefore could not have explained why the conflict would be reasonable before then relying on the VE's testimony. The VE's discussion that she had seen people perform jobs with similar or greater limitations did not address or acknowledge that a conflict existed with the requirements of constant or frequent handling as described by the DOT. *See id.* at 847 ("because the ALJ failed to recognize an inconsistency, she did not ask the expert to explain why a person with [the plaintiff]'s limitation could nevertheless meet the demands of Level 3 Reasoning"). Thus, the ALJ erred in failing to inquire into or reconcile the conflict.

Finally, Defendant suggests that it was the responsibility of Plaintiff's counsel to further cross-examine the VE. (Def.'s Opp'n at 5.) The Court rejects this argument. The Ninth Circuit has been "clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT--for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle--the ALJ is *required* to reconcile the inconsistency.'" *Lamear*, 865 F.3d at 1206 (quoting *Zavalin*, 778 F.3d at 846).

The Court finds it necessary to remand the case for compliance with SSR 00-4p.

### C. Development of the Administrative Record

Finally, Plaintiff contends that the ALJ did not satisfy his duty to develop the record because the ALJ did not obtain an updated report or evaluation of Plaintiff's physical impairments after receiving a January 2014 x-ray. (Plf.'s Mot. at 10.) The January 2014 x-ray showed L5-S1 degenerative disk disease and facet anthropathy with grade I spondylolisthesis. (AR 1131.) Plaintiff further argues that this failure to seek an updated report or evaluation was prejudicial as Plaintiff's ability to stand and walk was at issue, and the medical opinions may have been impacted by this x-ray. (Plf.'s Mot. at 11.) Defendant responds that Plaintiff had the burden of providing the required medical evidence, and that the ALJ properly found that the available medical evidence was sufficient to asses Plaintiff's RFC. (Def.'s Opp'n at 7.) Further, Defendant asserts that Plaintiff's testimony about his problems walking could not have triggered a duty to

order a consultative examination because the ALJ found Plaintiff's testimony to not be credible, a finding that Plaintiff did not challenge. (*Id.* at 6-7.)

In general, an ALJ has a "duty to fully and fairly develop the record," including conducting an appropriate inquiry if the evidence is ambiguous or on "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence . . . ." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The Ninth Circuit has found, however, that this duty to develop the record can be satisfied by: "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.* Thus, even assuming that the ALJ's duty to develop the record was triggered in this case, the ALJ satisfied that duty by holding the record open after the hearing. *See Chase v. Colvin*, 665 Fed. Appx. 583, 586 (9th Cir. 2016) ("Even assuming arguendo that further development of the record in this case was required, the ALJ satisfied this duty by 'keeping the record open after the hearing'") (quoting *Tonapetyan*, 242 F.3d at 1150).

## V. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ failed to comply with SSR 00-4p. Therefore, Plaintiff's motion for summary judgment is GRANTED, and Defendant's motion for summary judgment is DENIED. The Court remands this case for further proceedings.

The Clerk of the Court shall close this case.

IT IS SO ORDERED.

Dated: September 18, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge

11